UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DUSTIN E. MCGUIRE,<br><br>Plaintiff,<br><br>v.<br><br>ALYSSA WELDON, *et al.*,<br><br>Defendants. | CAUSE NO. 3:23-CV-446 |

**OPINION AND ORDER**

This matter is before the court on the Motion for Summary Judgment [DE 136] filed by Defendants on May 3, 2024. The plaintiff, Dustin E. McGuire, a prisoner without a lawyer, responded [DE 140] on May 17, 2024. Defendants filed their Reply [DE 141] on May 29, 2024. Plaintiff is proceeding in this case "against Sergeant Alyssa Weldon, Sergeant Richard Arnold, Sergeant Donald Teague, and Sergeant A. Lee in their personal capacity for monetary damages for deliberate indifference to his need for adequate food from December 2022 to January 2023 in violation of the Eighth Amendment[.]" [DE 8 at 3-4]. McGuire alleged in his complaint that he was having issues with his knee in December 2022 and was given a "lay-in" pass by medical staff, which meant he was excused from leaving his cell. *Id.* He claimed the defendants refused to bring him meals in his cell during this time, which caused him to miss numerous meals and lose weight. *Id.* at 1-2. The defendants filed a Motion for Summary Judgment [DE 136], arguing they were not deliberately indifferent to McGuire's need for adequate food because medical staff never instructed that McGuire's meals should

be brought to him in his cellhouse, and they reasonably relied on medical staff's determination that McGuire could ambulate with crutches to the dining hall to get his own meals. [DE 136].

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). "[T]he Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), but inmates are entitled to adequate food to meet their nutritional needs. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must allege that the defendant acted

with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834; *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee County*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)). "If a prisoner is under the care of medical experts a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (ellipsis omitted) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004)).

In determining whether the denial of food amounts to a constitutional violation, "a court must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). McGuire's claim is suspect at the outset because he was not actually deprived of his meals. McGuire was on crutches, and he contends that he was given a "lay-in" pass allowing him to have his meals brought to him in his cell. He has not alleged that he was unable to use his crutches and make his way to the dining hall with minimal effort.

The defendants have provided McGuire's medical records and an affidavit from Nurse Sherri Fritter, the Health System Administrator for Indiana State Prison ("ISP"), which detail that Nurse Fritter is familiar with the policies and procedures governing the healthcare of inmates at ISP. [DE 136-1 at 1]. Nurse Fritter is familiar with the terms "job lay-in" and "medical lay-in" that are prescribed to inmates by medical staff. *Id.*

When an inmate has a health issue that affects his mobility, a medical provider can prescribe a "lay-in" so the inmate does not have to go to work and will face no adverse consequences for not reporting to work. *Id.* at 1-2. The terms "job lay-in" and "medical lay-in" are interchangeable and mean the same thing. *Id.* at 2. An inmate who has been prescribed a "lay-in" still must ambulate on crutches to the dining hall to receive his meals. *Id.* In all of Nurse Fritter's time as Health System Administrator at ISP, no medical provider ever has prescribed a "lay-in" which instructed correctional officers to bring an inmate his meals in his cell. *Id.* Specifically, if a medical provider does not believe an inmate is able to ambulate to receive his meals, the medical provider will admit the inmate to the "G-Unit," which is a medical unit above the healthcare services area where inmates have meals brought to them. *Id.* at 2-3. Medical staff at ISP will admit any inmate who needs his meals brought to him to the G-Unit and never give correctional officers instructions to deliver meals to an inmate in any other cellhouse. *Id.* at 3. It would be impractical for correctional officers to deliver meals to other cellhouses because the dining hall at ISP is in a separate building from the cellhouses. *Id.*

On December 14, 2022, McGuire saw Dr. Marthakis for left knee pain. [DE 136-1 at 3-4, 31-34]. Dr. Marthakis wrote medical instructions for McGuire to receive crutches for two weeks and prescribed a "lay-in." *Id.* at 4, 37. The December 14, 2022 instructions did not admit McGuire to the G-Unit and made no mention of his meal logistics. *Id.* According to Nurse Fritter, these instructions from Dr. Marthakis meant that McGuire did not have to report to work for two weeks but still needed to ambulate on crutches to the dining hall for his meals. *Id.* at 4. On December 28, 2022, a nurse extended

McGuire's "lay-in" for an additional two weeks. *Id.* at 4, 25-28, 38. These instructions also made no mention of McGuire's meals. *Id.* Additionally, the records do not contain any claims by McGuire that he was unable to make the trek to the dining hall on crutches. Because McGuire does not dispute any of Nurse Fritter's attestations or the contents of his medical records, the court accepts them as undisputed.

      The defendants argue they were not deliberately indifferent to McGuire's need for adequate food because they reasonably relied on the treatment decisions of medical staff. The medical staff determined McGuire could ambulate to the dining hall to receive his meals and never instructed that his meals be brought to him in his cellhouse or that he be admitted into the G-Unit to receive his meals. [DE 137 at 8-10]. In his response, McGuire does not dispute that he was physically capable of ambulating with crutches to the dining hall to receive his meals. [DE 140]. McGuire also does not dispute the defendants' evidence that medical professionals never instructed that he be admitted to the G-Unit or that his meals be brought to him in his cellhouse. *Id.* Instead, McGuire argues that he could not leave his cellhouse to get his meals because he was informed by Lieutenant Michael Moon that "if he left the cellhouse, he would be placed into segregation." *Id.* at 1. He also argues he asked "multiple correctional officers on duty" for clarification of Lt. Moon's instructions, and they told him "if the lieutenant said not to leave, then he better not leave." *Id.* McGuire has not identified these "multiple correctional officers."

      Here, there is no evidence any of the named defendants were deliberately indifferent to McGuire's need for adequate food between December 2022 and January

2023. It is undisputed that, pursuant to the orders of medical staff, McGuire was meant to ambulate with crutches to the dining hall to receive his meals during the time he was prescribed a "lay-in." There is no evidence any medical provider ever instructed that McGuire should be admitted to the G-Unit to receive his meals or his meals should be brought to him in his cellhouse, and McGuire has provided no evidence he was physically incapable of ambulating to the dining hall to receive his meals. Therefore, the defendants reasonably deferred to the treatment decisions of medical staff and concluded McGuire could obtain his own meals from the dining hall and did not need his meals brought to him in his cellhouse. *See Greeno*, 414 F.3d at 656; *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) ("A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference"). Because it is undisputed the defendants were following the instructions of medical staff and ISP policy by requiring McGuire to obtain his own meals from the dining hall, McGuire has not shown they acted with "a total unconcern" for his welfare by declining to deliver his meals to his cell. *See Stockton*, 44 F.4th at 615.

As for McGuire's assertion that Lt. Moon (who is not a party in this lawsuit) prevented him from leaving his cellhouse, this is different from the claim on which McGuire is proceeding in this lawsuit. Specifically, McGuire alleged in his complaint that the defendants were deliberately indifferent for refusing to bring him his meals while he was prescribed a "lay-in" by medical staff, and he made no mention of any instructions by Lt. Moon. [DE 5]. Regardless, there is no evidence any of the named defendants followed these alleged instructions from Lt. Moon. McGuire's vague

assertions that he was instructed not to leave his cellhouse by Lt. Moon and that he discussed these instructions with "multiple correctional officers on duty" is insufficient to show that any of the named defendants exhibited a total unconcern for his welfare. Following the order of a superior officer does not equate deliberate indifference. *See Stockton*, 44 F.4th at 615; *Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("It is well established that in order to withstand summary judgment, the non-movant must allege specific facts creating a genuine issue for trial and may not rely on vague, conclusory allegations"); *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) ("Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough") (quotation marks, brackets, and citation omitted). Because there is insufficient evidence by which a reasonable jury could conclude the defendants exhibited a total unconcern for McGuire's need for adequate food, summary judgment is warranted in favor of the defendants.

For these reasons, the court:

(1) **GRANTS** the defendants' Motion for Summary Judgment [DE 136]; and

(2) **DIRECTS** the Clerk to enter judgment in favor of the defendants and against Dustin E. McGuire and to close this case.

ENTERED on this 4th day of December, 2024.

/s/ Andrew P. Rodovich
United States Magistrate Judge